

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 1 5 2013

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JACQUELINE WILSON, whose §
death has been suggested, §
§
    Plaintiff, §
§
VS. § NO. 4:12-CV-684-A
§
NOVARTIS PHARMACEUTICALS §
CORPORATION, §
§
    Defendant. §

<u>MEMORANDUM OPINION</u>
<u>AND</u>
<u>ORDER</u>

Apropos to issues now before the court:

> **Oh, what a tangled web we weave**
> **When first we practice to deceive!**

Sir Walter Scott, <u>Marmion</u>,
Canto VI, Stanza 17

A.    <u>The Misleading Representations Made in the Motion for</u>
<u>Substitution</u>

This action started with the filing on January 18, 2006, by

Jacqueline Wilson ("Jacqueline"), as plaintiff, against Novartis

Pharmaceuticals Corporation ("Novartis"), as defendant, of a

complaint in the United States District Court for the Southern

District of New York alleging injuries suffered by Jacqueline

caused by products alleged to have been designed, tested,

developed, manufactured, labeled, marketed, distributed, and sold

by Novartis. Subject matter jurisdiction was alleged to be based

on diversity of citizenship and an amount in controversy exceeding seventy-five thousand dollars. Compl. at 2, ¶ 5. The action became a part of the multidistrict Aredia and Zometa Products Liability Litigation, presided over by a judge in the United States District Court for the Middle District of Tennessee, Nashville Division, to which Case No. 3:06-MD-1760 was assigned. Case specific No. 3:06-CV-388 was assigned to this action upon its transfer from the Southern District of New York to the Middle District of Tennessee.

A suggestion of death was filed by Jacqueline's counsel on February 1, 2008, giving notice of the death of plaintiff, Jacqueline, on December 10, 2007, and advising that:

> In accordance with the Case Management Order entered in this case and Rule 25(a) of the Federal Rules of Civil [P]rocedure, Caroline Jean Wilson and Billy Bob Wilson, the personal representatives of Jacqueline Wilson's estate, will be substituted in this action so that Jacqueline Wilson's claims survive and the action on her behalf may proceed.

Case No. 3:06-MD-1760, Doc. 1142.

The Case Management Order entered in the Multidistrict Litigation on July 28, 2006, contained the following directives

pertinent to the filing of a motion for substitution of parties after the filing of the suggestion of death:

## V. Substitution of Plaintiffs.

In the event that a Plaintiff dies before his or her individual action is remanded, the following procedures shall govern the substitution of an individual as plaintiff in place of the deceased plaintiff:

*   *   *   *   *

B.   **Timing of Motion for Substitution.**  The ninety (90) day time period for filing a Motion for Substitution, as required by Fed. R. Civ. P. 25(a), will commence upon the filing of a Suggestion of Death. . . .

C.   **Contents of Motion for Substitution.**

1.   The Motion for Substitution shall identify the proposed substitute plaintiff by name and shall describe why the proposed substitute plaintiff is a "proper" party and why the claim has not been extinguished under the applicable state survivorship statute or applicable state common law.

2.   In the event that applicable state law requires the opening of an estate and the appointment of a personal representative to pursue the claims of a deceased plaintiff, plaintiff's counsel shall initiate or cause to be initiated proceedings to open an estate and/or obtain the appointment of a personal representative for plaintiff within thirty (30) days of the plaintiff's death or thirty (30) days from entry of this Order, whichever is later.

a.   If available at the time of filing, plaintiff's counsel shall attach as an exhibit to the Motion to Substitute a copy of any Order appointing the person sought to be substituted as the personal representative of the deceased plaintiff.

b. In the event that no personal representative has been appointed by the deadline for filing a Motion for Substitution, plaintiff's counsel shall describe in the Motion to Substitute the steps taken to obtain the appointment of a personal representative and state whether there are any competing applications. If the Court determines that the person sought to be substituted would be a proper party if appointed a personal representative of the deceased plaintiff and that the provisions of this Section of the Order and Fed. R. Civ. P. 25(a) have otherwise been complied with, the Court will provisionally grant the Motion for Substitution on the condition that the substituted plaintiff submit to the Court prior to remand of the plaintiff's claims a copy of the Order appointing him or her as the deceased plaintiff's personal representative.

3. Plaintiff's failure to comply with the provisions of this Section, including the requirement that an Order appointing the substitute plaintiff as the decedent's personal representative be filed prior to remand where the Court grants a provisional substitution, will entitle Defendant to request a dismissal of plaintiff's action with prejudice in accord with Fed. R. Civ. P. 25(a).

Case No. 3:06-MD-1760, Doc. 89 at 12-13.

On May 7, 2008, Caroline Jean Wilson ("Caroline") and Billy Bob Wilson ("Billy") filed a document titled "Motion for Substitution Filed on Behalf of Plaintiff Jacqueline Wilson" in which the following recitations and request for order were made:

1. Jacqueline Wilson passed away on December 10, 2007. A Suggestion of Death was filed on February 1, 2008 (DE 1142).

2. Under Texas law, <u>the claim of Jacqueline Wilson survives to her personal representative(s)</u>.

3.   <u>Pursuant to</u> Mrs. Wilson's Last Will and Testament, her children, Caroline Jean Wilson and Billy Bob Wilson Claudia Bourne [sic], have been named the Executors of Mrs. Wilson's estate.

4.   Based on the foregoing, the Court should enter an order substituting Caroline Jean Wilson and Billy Bob Wilson <u>as the personal representatives of the Estate of Jacqueline Wilson</u>, deceased, <u>in place and instead of Jacqueline Wilson</u>.

Mot. for Substitution, Case No. 3:06-MD-1760, Doc. 1341; Case No. 3:06-CV-388, Doc. 12 (emphasis added). The movants, Caroline and Billy, did not ask that they be substituted for Jacqueline in their individual capacities. Rather, they requested that they be substituted "<u>as the personal representatives of the Estate of Jacqueline Wilson</u>, deceased, in place and in stead of Jacqueline Wilson," <u>id.</u>, (emphasis added), because, according to the movants, the claim of "Jacqueline Wilson survive[d] to her personal representatives," <u>id.</u>, not to movants in their individual capacities.

Not only was the motion filed beyond the ninety-day time period for filing such a motion, as contemplated by section V.B., the clear implication of the wording of the motion for substitution is that Caroline and Billy had been appointed by a probate court to serve as personal representatives of Jacqueline's estate by virtue of having been named to serve in that capacity by Jacqueline's will, yet no order was attached as

5

an exhibit, nor was there an explanation as to why such an order was not attached.

A notation on a slightly modified version of the motion for substitution (omitting the name Claudia Bourne) shows that the motion was granted by Magistrate Judge Joe B. Brown, presumably on or shortly before May 13, 2008. Case No. 3:06-MD-1760, Doc. 1354; Case No. 3:06-CV-388, Doc. 13. By granting the motion for substitution, the Magistrate Judge substituted movants in their alleged representative capacities, not in their individual capacities, for Jacqueline.

Magistrate Judge Brown's order substituting Caroline and Billy as the personal representatives of the estate of Jacqueline was obtained through deception practiced on the Middle District of Tennessee court by Caroline and Billy, acting through their counsel. The February 1, 2008 suggestion of death informed the court that there would be a personal representative of Jacqueline's estate to be substituted in the action so that Jacqueline's claims would survive and the action could proceed on her behalf, but, the fact is that, although Caroline and Billy appear to have been designated in Jacqueline's will to be the independent executors of her estate, no one has been court-appointed as personal representative of Jacqueline's estate, and

there appears to have been no plan to seek such a court appointment.

Caroline and Billy knew that Jacqueline's will had not been offered for, or admitted to, probate because it was in the possession of Billy. Counsel for the plaintiff knew, or should have known, of those facts. Inasmuch as counsel knew that "[u]nder Texas law, the claim of Jacqueline Wilson survives to her personal representative(s)," counsel for plaintiff should not have represented to the Middle District of Tennessee court that Caroline and Billy were "personal representatives of the Estate" without first confirming the truthfulness of that representation.

B. Deceptive Conduct in Response to This Court's Orders[1]

Counsel for Caroline and Billy, and his clients, having first practiced to deceive, created a more tangled web in response to orders of this court. Once this action made its way to this court after it was transferred by the Multidistrict Litigation court back to the Southern District of New York, and then was transferred by the Southern District of New York to this

---

[1] The November 5, 2012, November 19, 2012, and December 14, 2012 motions discussed under this heading as having been filed by Caroline and Billy, along with their May 7, 2008 motion for substitution, were ordered unfiled and stricken by the December 19, 2012 order that is discussed on pages 14-15 of this memorandum opinion and order; however, those items and their contents are discussed so that the overall context for the rulings made in the December 19, 2012 order and in this memorandum opinion and order will be provided.

court, this court ordered, on October 22, 2012, that Caroline and

Billy provide, by November 5, 2012,

> a document that provides proof, through appropriate
> attachments if required, that plaintiffs are the
> personal representatives of the estate of Jacqueline
> Wilson, deceased, and that plaintiffs are authorized to
> prosecute this action as personal representatives of
> such estate.

Oct. 22, 2012 Order at 2.

Rather than to confess their earlier deceptions, Caroline

and Billy, acting through New York attorney Daniel A. Osborn

("Osborn")[2], filed on November 5, 2012, a motion asking for an

additional fourteen days to comply with the October 22, 2012

order, giving two reasons for the requested extension, first that

counsel's office facilities had been interrupted by Hurricane

Sandy and, second, that "the attorney in Granbury, Texas, Mr.

Clayton Bryant, who is assisting Plaintiffs in procuring the

necessary documents, is out of town until November 8, 2012."

Mot. for Additional Time filed Nov. 5, 2012 at 1. The message

could not have been clearer from Caroline and Billy and their

counsel -- the documents they were ordered to file were in

existence and available, but they simply had not been able to

---

[2]Daniel A. Osborn ("Osborn") was the signatory attorney, or one of the listed attorneys, for the plaintiff, on each of the documents that are discussed in this memorandum opinion and order as having been filed by or on behalf of Jacqueline before her death or Caroline and Billy as purported representatives of the estate of Jacqueline after her death. By order signed November 2, 2012, the court granted Osborn pro hac vice status. See Oct. 16, 2012 and Nov. 2, 2012 Orders.

obtain them timely for the reasons expressed in the motion asking for additional time. By order signed November 5, 2012, the court granted the motion for additional time, ordering that the documents responsive to the October 22, 2012 order be filed by November 19, 2012.

The web became more tangled by the filing by Caroline and Billy, again through Osborn, on November 19, 2012, of another motion for additional time to respond to the October 22, 2012 order, this time seeking an extension until December 14, 2012, in order to have "sufficient time to obtain the required documentation." Mot. for Additional Time filed Nov. 19, 2012 at 2. This time, the excuse for not timely providing the documentation was as follows:

> The attorney originally engaged to help obtain <u>the necessary documentation</u>, Clayton Bryant in Hood County, notified us on November 13, 2012 that he had a case called for trial that day and that it appeared that the case would in fact be going to trial. Mr. Bryant informed us that because of this development, he would not have sufficient time to devote to this matter. Mr. Bryant did provide the names of other attorneys who might be available. We have since contacted and spoken with (but not formally engaged) different attorneys in Hood County, who have expressed a willingness to assist the Wilsons.

<u>Id.</u> at 1-2 (emphasis added). Again, Caroline and Billy and their counsel, although admitting that "documentation" was "necessary," chose not to confess that the documentation the October 22, 2012

9

order directed them to file did not exist, though they obviously knew that it was nonexistent. By order signed November 20, 2012, the court granted the requested extension until December 14, 2012, for the filing of the documentation required by the October 22, 2012 order.

On December 14, 2012, Caroline and Billy filed another motion for additional time to respond to the October 22, 2012 order, this time disclosing the deceptions they had practiced on this and the predecessor courts in this action by making known to the court for the first time that Caroline and Billy, in fact, were not court-appointed personal representatives of the estate of Jacqueline, and that there is no documentation in existence that could be provided to establish that they were serving, or had ever served, in that capacity.

The December 14 motion for additional time revealed that Caroline, Billy, and their counsel had finally obtained an attorney in Texas who would be willing to file, and had filed, in a Texas probate court, a motion asking that Jacqueline's will be admitted to probate as a muniment of title only. The application for probate was not filed until December 11, 2012. Dec. 14 Mot. for Additional Time, Attach. at 1. In the December 14 motion, Caroline and Billy, acting through Osborn, admitted the falsity of the representation they had made to the Multidistrict

Litigation court that they were personal representatives of Jacqueline's estate, stating on the first page of the motion that "[b]ecause Jacqueline Wilson passed away more than four years ago, letters testamentary cannot be issued, <u>nor can a personal representative be appointed</u>." Dec. 14 Mot. for Additional Time at 1 (emphasis added). The movants went on to add that, inasmuch as no personal representative of Jacqueline's estate could be appointed, "[i]nstead, Plaintiffs must file an application to admit Jacqueline Wilson's will to probate as a Muniment of Title . . . ." <u>Id.</u> at 2. The further admission was made that an order of the probate court would have to be obtained for Caroline and Billy to comply with the court's October 22, 2012 order that they show proof that they have authority to replace Jacqueline as a party:

> Applicants did not file Decedent's Will for probate within four (4) years following Decedent's death due to the fact that Decedent's assets were of nominal value. Decedent was involved in a lawsuit before her death, and Applicants have continued pursuing the lawsuit on Decedent's behalf. The lawsuit is currently pending in the United States District Court for the Northern District of Texas, and <u>Judge John H. McBryde has ordered Applicants to show proof they have authority to act on behalf of the Estate.</u> Letters testamentary cannot be issued nor can an executor be appointed since four (4) years have elapsed since Decedent's death, but <u>admitting the Will to probate as a muniment of title will provide proof that Applicants are the sole beneficiaries under the terms of Decedent's Will.</u>

Id. at 2. First Ex. (Appl. for Probate), at 2 ¶ 8 (emphasis added).

In the final analysis, the message by Osborn, on behalf of Caroline and Billy, to the court in the December 14, 2012 filing was that when the motion for substitution was filed on May 7, 2008, Caroline and Billy had not been appointed personal representatives of the estate of Jacqueline, that they were never appointed personal representatives of Jacqueline's estate, and that attempts were being made to cause Jacqueline's will to be probated as a muniment of title in order to provide proof that Caroline and Billy would be the sole beneficiaries under the terms of the will.

C.    The December 19, 2012 Telephone Conference

Having become aware of the deceptions practiced on this court and the predecessor courts, the court arranged for a telephone conference/hearing on December 19, 2012, with Osborn, Steven Kuban ("Kuban") (the attorney working on the probate matter in Hood County), and counsel for Novartis on the line. Osborn told the court that Jacqueline's will had been in Billy's possession since Jacqueline's death, and that it was not offered for probate "[b]ecause at the time of Ms. Wilson's passing, she really had no assets . . . except the clothes on her back," Tr. of Dec. 19, 2012 Hr'g at 9, and that at that time "the family

12

made a strategic decision that there was no point in probating the will when the woman didn't have anything to -- to be passed under the will." Id. Osborn admitted that no attempt had been made to probate the will before Kuban's December 2012 application to probate it as a muniment of title.

Counsel for Novartis informed the court during the telephone conference/hearing that the December 14, 2012 filing of Caroline and Billy was the first knowledge Novartis had that Caroline and Billy were not individuals "properly in place to represent the estate." Id. He noted that the application for admission of the will to probate as a muniment of title recited that Jacqueline's "estate had assets of nominal value," which was inconsistent with the allegation made in the January 2006 complaint that Jacqueline had a claim worth at least $75,000.00.

Considering the misleading representations that were made in the papers filed in February 2007 and May 2008 leading to the Magistrate Judge's order of May 2008 substituting Caroline and Billy "as the personal representatives of the Estate of Jacqueline Wilson, deceased, in place and instead of Jacqueline Wilson," the court concluded that the Magistrate Judge's order should be set aside and that all documents that had been filed in this action or any of its predecessors in New York or Tennessee by Caroline or Billy should be unfiled and stricken from the

record of this action. The court's remarks informed the parties that the court reached that conclusion by reason of the deceptions practiced on the court.[3]

D.  The December 19, 2012 Order

On December 19, 2012, the court issued an order that provided, inter alia, as follows:

> The court ORDERS that the order of Magistrate Judge Joe B. Brown filed May 13, 2008, in Case Nos. 3:06-CV-388 and 3:06-MD-1760 on the docket of the United States District Court for the Middle District of Tennessee granting the motion for substitution of Caroline Jean Wilson and Billy Bob Wilson, as the personal representatives of the Estate of Jacqueline Wilson, Deceased, in place and in stead of Jacqueline Wilson be, and is hereby, set aside ab initio so that it has never been of any force or effect.
>
> The court further ORDERS that all items filed in the above-captioned action, or any related action (Case No. 1:06-CV-369 on the docket of the United States District Court for the Southern District of New York and Case Nos. 3:06-CV-388 and 3:06-MD-1760 on the docket of the United States District Court for the Middle District of Tennessee), by Billy Bob Wilson and Caroline Jean Wilson, on behalf of Jacqueline Wilson, be, and are hereby, unfiled and stricken, and that they be deemed to be unfiled and stricken even though the clerk of court does not physically remove the items from the court papers.

---

[3]During the December 19, 2012 telephone conference/hearing at which Osborn was in attendance, the court expressed its concern about what appeared to be misrepresentations in the suggestion of death and motion for substitution filed in this action while it was pending before the Multidistrict Litigation court, Tr. of Dec. 19, 2012 Hr'g at 6-12; and, after having heard from defense counsel the concern defendant had with the misrepresentations and defense counsel's suggestion that the substitution granted in 2008 should be vacated, the court explained on the record the reasons for the court's order of vacatur, id. at 13-15.

Dec. 19, 2012 Order at 1-2. The order went on to change the style of the action to "Jacqueline Wilson, Whose Death Has Been Suggested, Plaintiff, v. Norvartis Pharmaceuticals Corporation, Defendant," and directed that each party file by January 22, 2013, whatever motion or other documents such party thought to be appropriate considering the rulings that were made in the order, and that by January 29, 2013, each party file a response to any such motion or other document filed by another party.

E.    Legal Authority for the December 19, 2012 Rulings

The court concluded that the conduct of Osborn, acting on behalf of Caroline and Billy, in making misrepresentations to the Multidistrict Litigation court for the purpose of obtaining an order substituting them in their "representative capacities" for Jacqueline in this action, constituted an abusive litigation practice for which the court had the inherent power to correct in order to maintain the dignity of the courts. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980); In re Stone, 986 F.2d 898, 902 (5th Cir. 1993). In determining whether to exercise its inherent power, the court was entitled to, and did, deem the conduct of the attorneys who filed a motion for substitution to be conduct for which Caroline and Billy were accountable. See Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962). The court could have, as a sanction, dismissed this

action.  See Roadway Express, Inc., 447 U.S. at 764-65; Link, 370 U.S. at 632-33.  Rather than to dismiss the action, the court used its inherent power to sanitize the record of the action by removing from it the fruits of the improper conduct of counsel for Caroline and Billy, while, at the same time, giving them an opportunity to file by January 22, 2013, whatever motion or other document they thought to be appropriate considering the rulings made by the court.  If the rulings of this court were viewed to be sanctions, no lesser sanction would have adequately addressed the conduct to which the rulings were directed.

Furthermore, by ruling as it did on December 19, 2012, the court gave effect to a principle recognized by the Fifth Circuit in Diehl v. United States that "fraud destroys the validity of everything into which it enters" and "[i]t affects fatally even the most solemn judgments and decrees."  438 F.2d 705, 709 (5th Cir. 1971).  The court's rulings setting aside the order gained by Caroline and Billy, acting through Osborn, by the filing of their false motion for substitution and striking from the record everything filed by Caroline and Billy, cleansed the record of items the validity of which had been destroyed by the fraudulent nature of the motion for substitution.

F. <u>The January 22, 2013 Filing by Novartis</u>

On January 22, 2013, Novartis filed a motion to dismiss with prejudice, supported by a brief arguing that the provisions of Rule 25(a)(1) of the Federal Rules of Civil Procedure require that the action be dismissed.  The rule provides that if a motion for substitution of a deceased plaintiff "is not made within 90 days after service of a statement noting the death, the action by or against the decedent <u>must</u> be dismissed." Fed. R. Civ. P. 25(a)(1) (emphasis added).  Novartis maintained that a legally valid motion for substitution has yet to be filed, much less was one filed within the ninety days contemplated by the rule, with the consequence that the court must dismiss the action Jacqueline brought in January 2006.  Alternatively, Novartis suggested that the action should be resolved by the grant of a motion for summary judgment Novartis filed while the case was on the Multidistrict Litigation docket, which, at this time, is unopposed by virtue of the striking and unfiling provision of the December 19, 2012 order.

G. <u>The January 22 and 24, 2013 Filings of Plaintiff</u>

Counsel for Caroline and Billy filed a document on the January 22, 2013 deadline fixed by the December 19, 2012 order, titled "Motion to Vacate December 19, 2012, Order or For Other

Relief, and Brief in Support," which was corrected by a version of the motion filed January 24, 2013.

1.   The Motion of Caroline and Billy to Vacate is Founded on "Straws"

The January 24 filing further tangles the web by a pretense that Osborn does not realize that the rulings the court announced during the December 19, 2012 telephone conference/hearing and that were contained in the order of that same date were made because of the misleading misrepresentations that had been made by Caroline and Billy, acting through their attorney, to the Multidistrict Litigation court.   In the corrected motion, Osborn and his local counsel start out with a summary stating that presumably this court issued the December 19, 2012 order "because it believed the status of the Wilson Children implicated a question of subject matter jurisdiction, i.e., standing" and that "the issue is not a question of standing; it is a question of capacity, which is in the nature of an affirmative defense." Corrected Mot. to Vacate at the second Page 1, Section I.

Having created a straw ground for the court's ruling, and straw responsive arguments, counsel then devote their attention to those arguments, failing, in the process, to address the real reasons Osborn knows the court had for the December 19 rulings.

Next, the authors of the motion claimed ignorance as to why, and puzzlement over, the court's decision to require, as it did by its October 22, 2012 order, that Caroline and Billy provide proof, through an appropriate filing, that they are the personal representatives of the estate of Jacqueline and are authorized to prosecute this action in that capacity. Id. at 2. Of course, Osborn knew exactly why the court issued the October 22, 2012 order.[4]

2. <u>Caroline and Billy Do Not Benefit from the Fact That They Gained in January 2013 a Status That Would Have Permitted Them to be Timely Substituted for Jacqueline if They Had Attained That Status in Early 2008</u>

At pages 9-10 of the motion to vacate, Caroline and Billy argue that, "regardless of any previous issues, any defect in capacity has now been cured, as the Wilson Children are now the

_____

[4]Moreover, Osborn presumably was aware of the order Magistrate Judge Brown signed May 5, 2011, in a case in which Osborn was the attorney for the plaintiff that provided as follows:

The Magistrate Judge is concerned that there appears to be a growing problem with substitution when a plaintiff dies. The case management order provides a timetable for filing suggestions of death, and Rule 25 provides additional time limits when substitution must be made after a suggestion of death is spread on the record. The requirements for service of this suggestion under Rule 25(a)(3) are specific as to the method that must be used for parties and nonparties under Rule 4.

The Plaintiffs' Steering Committee is directed to remind all counsel of the requirements of the scheduling order concerning substitution when a Plaintiff dies, and to insure that when motions to substitute are filed that they include appropriate documentation from the state court that the person designated for substitution is appropriately qualified under state law. (*See* Docket Entries 89 and 103).

The Clerk is directed to send a copy of this order to the Plaintiffs' Steering Committee.

Defs.' Opp'n to Pl.'s Mot. to Vacate, App. at 19-20; Case No. 3:06-CV-974, Middle Dist. of Tenn., Doc. 17; Case No. 3:06-MDL-1760, Doc. 4478.

indisputable representatives of the estate." Id. at 9. That
argument misses the point. The December 19, 2012 rulings of this
court were not based on lack of capacity. Rather, as previously
noted, they were exercises by the court of its inherent power to
maintain the dignity of the courts and to rectify the results of
an abusive litigation practice.

In support of the contention that "any defect in capacity
has now been cured, as the Wilson Children are now the
indisputable representatives of the estate," the following
argument is made in the motion to vacate:

> In this case, the County Court of Hood County admitted
> the will to probate as a muniment of title. See App.
> Supp. Mot., Ex. A-5 at 15-16. In turn, the will names
> the Wilson Children as the only beneficiaries. See
> App. Supp. Mot., Ex. A-2 at 6. Therefore, under the
> terms of the will, the Wilson Children are now the
> personal representatives of the estate, whether or not
> they ever were before. Therefore, whether or not there
> was previously any defect in capacity, it has been
> cured.

Id. at 9-10 (emphasis in original). The court is uncertain as to
what point the authors of the motion to vacate intend to make by
the quoted language. Even if the "Wilson Children"[5] were now the

---

[5]The use of "Wilson Children" in the motion to vacate as a shorthand reference for Caroline and
Billy is misleading because Caroline and Billy are not the only children of Jacqueline. The record shows
that Jacqueline was survived by a third child, James Leonard Wilson, who was alive until February 5,
2011. App. in Supp. of Mot. to Vacate at 4, 6. Thus, if Jacqueline's will were to be disregarded and if
the issue in May 2008 had been who would be entitled to be substituted as successors to Jacqueline's
estate as her legal heirs, the persons who would have been substituted for Jacqueline would have been
Caroline, Billy, and James Leonard Wilson in their individual capacities. Tex. Prob. Code § 38(a)1.

personal representatives of Jacqueline's estate, that would not solve the problem created by the misrepresentations made in the motion for substitution filed in May 2008. The order granting that motion was properly vacated for the reasons explained above. There has been no new motion for substitution filed, nor has there been a motion seeking an extension of the Rule 25(a) ninety-day deadline for the filing of a motion for substitution once a suggestion of death has been noted in the record of the action.[6]

Moreover, the authors of the motion to vacate are in error in believing that the admission of the will to probate as a muniment of title causes "the Wilson Children [to be] the personal representatives of [Jacqueline's] estate." Id. (emphasis in original). There is nothing in Texas law that suggests that anyone becomes a personal representative of a decedent's estate by virtue of the probate of the decedent's will

---

[6]In pertinent part, Rule 25(a)(1) of the Federal Rules of Civil Procedure provides:
    If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.
Fed. R. Civ. P. 25(a)(1) (emphasis added).

as a muniment of title.[7]  Rather, the effect under Texas law of

such a probate is described in the Texas Probate Code as follows:

> (c)  The order admitting a will to probate as a muniment of title shall constitute sufficient legal authority to all persons owing any money to the estate of the decedent, having custody of any property, or acting as registrar or transfer agent of any evidence of interest, indebtedness, property, or right belonging to the estate, and to persons purchasing from or otherwise dealing with the estate, for payment or transfer, without liability, to the persons described in such will as entitled to receive the particular asset without administration.  <u>The person or persons entitled to property under the provisions of such wills shall be entitled to deal with and treat the properties to which they are so entitled in the same manner as if the record of title thereof were vested in their names.</u>

Tex. Prob. Code § 89C.(c) (emphasis added).  Thus, if Caroline

and Billy in fact are the sole beneficiaries named in

Jacqueline's will, there is the prospect that they would have

been entitled as Jacqueline's "successors" to be substituted for

---

[7]While the federal rules, rather than state-law principles, govern the procedure for substitution following a party's death, state substantive law determines survivability of the cause of action and the status of the party moving to be substituted for the deceased party.  See Graham v. Henderson, 224 F.R.D. 59, 63-64 (N.D. N.Y. 2004); Marcano v. Offshore Venezuela, 497 F. Supp. 204, 207 (E.D. La. 1980).  Texas substantive law contemplates that "[a] personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person." Tex. Civ. Prac. & Rem. Code § 71.021(b). A person named as an executor in a will can, if the application is timely filed, attain upon probate of the will the status as personal representative of the deceased person's estate.  Tex. Prob. Code § 76.  If the will is not timely filed for probate, or if there is no need for traditional probate, the will can be admitted to probate as a muniment of title only, in which case the probate of the will would cause those named in the will as beneficiaries of the estate to become successors to the decedent in the ownership of assets of the estate. Id. §§ 89A, 89B, and 89C.  Texas law contemplates that no property interest will pass under a Texas will "until such will has been admitted to probate." Id. § 94.  Thus, until Jacqueline's will was admitted to probate either as a muniment of title or through a traditional application, there is no provision under Texas law that would authorize Caroline and Billy to have the status as the survivors of Jacqueline or the status as the personal representatives of her estate.

Jacqueline as plaintiff in this action if their "successor"

status had been established by order of the probate court, and,

if they had made an appropriate motion for substitution in their

individual capacities, as successors, within ninety days after

the suggestion of Jacqueline's death was filed in February 2008.

They chose for whatever reason[8] not to seek probate court action

of any kind until December 11, 2012.

H.    **Novartis's Opposition to Motion of Caroline and Billy to Vacate and Its Cross-Motion to Dismiss for Lack of Subject Matter Jurisdiction**

On January 29, 2013, Novartis filed its opposition to the

motion to vacate the December 19, 2012 order and its cross-motion

to dismiss for lack of subject matter jurisdiction.

The thrust of the cross-motion to dismiss was that Caroline

and Billy should be bound by the representation they made to the

probate court in order to obtain the order admitting the will to

probate as a muniment of title that Jacqueline's estate has only

a nominal value.   From there, Novartis reasons that Caroline and

Billy cannot legitimately claim that this court has subject

matter jurisdiction over this action because the position they

---

[8]Caroline and Billy tender as their excuse for not offering the will to probate at an earlier date that there was no reason to do so because Jacqueline had no assets of significant value. At this late date, an excuse for not offering the will for probate at an earlier date is, at best, somewhat speculative, bearing in mind that Jacqueline's third child, who was omitted from the will, and who no longer is alive, would have been in a position to consider a contest of the will had it been offered for probate during his lifetime.

took in the probate court in order to gain admission of the will to probate is inconsistent with any contention that the amount in controversy in this action has a value in excess of the $75,000 required for subject matter jurisdiction in a diversity case.

Alternatively, Novartis again asserts that, in any event, this action should be dismissed because of the failure of Caroline and Billy to file a legally valid motion for substitution of parties within the ninety-day time period established by Rule 25(a)(1) of the Federal Rules of Civil Procedure.

I. <u>Response of Caroline and Billy to Novartis's Motion to Dismiss</u>

On January 29, 2013, Caroline and Billy filed a response to Novartis's January 22 motion to dismiss. This time, counsel for Caroline and Billy resort to the contention that this court's December 19, 2012 rulings left the motion for substitution Caroline and Billy filed on May 7, 2008 unscathed, with the consequence that it continues to be in effect and that the record reflects that Caroline and Billy not only timely filed a motion to substitute, but one that technically remains pending. For reasons previously discussed, that contention by Caroline and Billy also lacks substance. The December 19, 2012 rulings of this court constituted a striking and unfiling of the motion for

substitution as well as all other items filed by Caroline and Billy in the litigation.  See Dec. 19, 2012 Order at 1-2.

Next, Caroline and Billy argued that they really did not make false representations in the May 7, 2008 motion for substitution.  The court disagrees with that contention for each of the reasons given in the earlier parts of this order.

J.    The Rulings the Court is Making on the Pending Motions

Taking into consideration the discussions had and factors mentioned in the preceding parts of this memorandum opinion and order, the court has concluded that the following rulings should be made on the pending motions:

1.    The Motion of Caroline and Billy to Vacate is to be Denied

Caroline and Billy have provided no sound reason why the court should vacate its December 19, 2012 rulings.  Most of their arguments in support of that motion simply are not on point, and appear to be designed more to mislead than to provide rational argument directed to the true reasons why those rulings were made.  They conclude their motion to vacate with "if the Court has any additional concerns, Plaintiffs request that the court identify such concerns and allow the Wilson Children . . . to address the issues."  Corrected Mot. to Vacate at 10, sec. VII.  Needless to say, the court declines to engage in the kind of game

25

playing proposed by Caroline and Billy and their counsel. Counsel for Caroline and Billy presumably know how to specifically request whatever relief they think is appropriate without the court being involved in telling them what they should be requesting. They were directed by the December 19, 2012 order to file by January 22, 2013, whatever motion or other document they thought to be appropriate considering the rulings that were made in that order. They failed to avail themselves of that opportunity to seek an extension of time of the Rule 25(a)(1) ninety-day deadline or to tender for filing a legally correct motion for substitution.

The court is hereby denying the motion of Caroline and Billy.

2. <u>Novartis's Motions to Dismiss and Related Requests for Relief</u>

The court has concluded that the motion of Novartis to dismiss based on the failure of Caroline and Billy to timely file a legally acceptable motion for substitution should be granted.[9] The motion for substitution they filed May 7, 2008 has been ordered unfiled and stricken. Caroline and Billy have not sought

---

[9]Two cases of interest in which the action filed by the deceased person apparently was dismissed under the authority of Rule 25(a)(1) of the Federal Rules of Civil Procedure are <u>McDaniel v. Novartis Pharm. Corp.</u>, No. 2:08-CV-2088, 212 WL 32608 (W.D. Ark Jan. 6, 2012), and <u>Ashley v. Illinois Cent. Gulf R.R. Co.</u>, 98 F.R.D. 722 (S.D. Miss. 1983). The reasons for dismissal of Jacqueline's action against Novartis in this case are at least as compelling as the reasons for the dismissals in <u>McDaniel</u> and <u>Ashley</u>.

an extension of the ninety-day deadline fixed by Rule 25(a)(1) of the Federal Rules of Civil Procedure for the filing of a legally proper motion for substitution, nor have they tendered any such motion for filing. They have chosen to stand or fall on the one they filed May 7, 2008. For the reasons discussed in this memorandum opinion, in addition to having been stricken from the record, the May 7, 2008 motion was not a legally effective one.

The court does not reach for discussion the other relief sought by Novartis in its motion and cross-motion except to say that the record would need to be further developed before the court could seriously consider the motion that questions the court's jurisdiction.

## ORDER

For reasons given above, and as contemplated by Rule 25(a)(1) of the Federal Rules of Civil Procedure, the court ORDERS that the action by Jacqueline against Novartis that was asserted by Jacqueline before her death, be, and is hereby, dismissed.

SIGNED February 15 2013.

_____
JOHN McBRYDE
United States District Judge

27